SARAH PLOWMAN *et al.*, *Appellees*, v. LAURA V. NICH-
OLSON *et al.*, *Appellees, and* GEORGE T. HUGHES *and*
CHARLES F. HUGHES, *Appellants.*

No. 15,832.

### SYLLABUS BY THE COURT.

EVIDENCE—*Transactions with Persons Since Deceased—Objec-
tion Waived.* The issue being whether a deed from a parent
to a child was made as an advancement, a statement made
by the grantee as a witness that no consideration was paid
for it is testimony relating to the transaction between him
and the grantor, and, if brought out by the questions of his
opponent in the litigation, qualifies him to narrate all the
attendant circumstances, notwithstanding he would other-
wise be rendered incompetent to do so by the statute regard-
ing evidence concerning personal transactions with persons
since deceased.

Appeal from Shawnee district court; ALSTON W.
DANA, judge. Opinion filed July 3, 1909. Affirmed.
Rehearing allowed September 23, 1909. Second opin-
ion filed December 11, 1909. Reaffirmed.

*Edwin D. McKeever,* and *Frank Doster,* for the ap-
pellants.

*W. R. Hazen,* and *F. P. Lindsay,* for the appellees,
except Laura V. Nicholson; *James A. Troutman, Rob-
ert Stone,* and *J. B. Larimer,* for appellee Laura V.
Nicholson.

The opinion of the court was delivered by

MASON, J.: Elijah Hughes some forty years before
his death conveyed all of his property to his wife,
Rebecca G. Hughes, and thereafter, although engaged
actively in business, he conducted it all in her name.
The couple had eight children, to each of whom, ex-
cepting two (George T. and Charles F.), they from
time to time executed deeds to various tracts of real
estate, the title to which was held by the wife; or,

what amounted to the same thing, in some instances
land was purchased, paid for by checks drawn by the
husband, as agent, and conveyed directly to one of the
children. Mrs. Hughes died intestate shortly after her
husband, and an action was brought for the partition
of the real property owned by her at the time of her
death. George T. and Charles F. Hughes claimed that
the deeds to the other children had been made as ad-
vancements, but the other heirs, with two exceptions,
denied this, and the court found against the contention.
On review the principal question presented is whether
there was any competent evidence to support that find-
ing. Several of the grantees were permitted to testify
that at the time of the delivery of the deeds Elijah
Hughes and his wife made statements tending to show
that in each instance a preferential gift and not an
advancement was intended, and the inquiry is there-
fore narrowed down to the question whether this testi-
mony should have been admitted. Two objections are
made to it: (1) That Elijah Hughes was not shown to
be the agent of his wife so far as to make his state-
ments evidence of her intentions, and (2) that the wit-
nesses were incompetent under the statute forbidding
a party to testify in his own behalf in respect to any
transaction had personally by him with a person since
deceased, as whose heir the adverse party claims. (Civ.
Code, § 322; Gen. Stat. 1901, § 4770.)

Probably in view of all the circumstances shown by
the evidence it might fairly be inferred that the prop-
erty held in the name of Mrs. Hughes really belonged
to her husband, or that they owned it in common. But
disregarding this feature of the matter, there was suf-
ficient evidence of her acquiescence in his conduct of
the business relating to the transfer of the property,
and indeed of her intrusting its management to him,
to justify an inference that whatever he did was done
by her authority.

The grantees in the deeds were manifestly incom-

petent to testify concerning any communication made to them personally by the grantors, unless their disqualification under the statute was in some way removed. They were in the first instance called to the stand by the adverse parties and asked what, if anything, they paid for the deeds. They answered that they paid nothing. We think the trial court correctly held that by this course their opponents waived the objection to the testimony complained of, under the rule announced in *Niccolls v. Esterly*, 16 Kan. 32, where of a somewhat similar situation it was said:

"Now the testimony of the plaintiff in his own behalf was in reference to the same transactions of which he had testified at the instance of defendant. And while, if the defendant had so chosen, none of this testimony could have been admitted, yet, having interrogated the plaintiff concerning these matters, and having obtained some of the facts concerning them, he could not thereafter object to the plaintiff's giving all the facts. By introducing part, he opens the door to all. Just as a party may not introduce his own statements in his own behalf, yet if his adversary draws out part of a conversation he may introduce the balance. The principle is general that where a particular witness, or a certain kind of testimony, may be excluded, if the party who has the right to insist upon the exclusion waives that right, and himself calls the witness or introduces the testimony, he can not, after he has obtained what he desires, insist upon the exclusion, so far at least as to prevent a full development of the matters which he has partially presented." (Page 34.)

That the question asked by the adverse parties was framed to develop merely the negative fact that the deeds were not executed for a valuable consideration does not affect the matter. That nothing was paid for the conveyances tended to fix the character of the transactions of which their delivery formed a part. The proponents of the question which elicited proof of that circumstance can not complain that the same witness was permitted to testify to anything said or done in

Plowman v. Nicholson.

connection with such transactions that might throw light upon their real nature. A quite similar situation was presented in *Nay et al. v. Curley*, 113 N. Y. 575. There administrators sued to recover the amount of a loan they claimed their intestate had made to the defendant. They showed that the decedent had drawn a check to the defendant, who had received the money on it. To rebut the presumption that the check was given to pay a debt they then called the defendant to the stand and asked him whether when it was drawn the decedent owed him anything, receiving a negative·answer. .The defendant then offered himself as a witness in his own behalf and was asked by his counsel to state what had taken place between him and the decedent. The question was excluded as obnoxious to the statute, and this ruling on review was held to be erroneous, the court using this language, much of which is pertinent to the facts of this case:

"The correctness of the ruling excluding the defendant from testifying in his own behalf as to what took place between the intestate and himself at the time the check was given turns upon the point whether the plaintiffs by asking the defendant, on their examination, whether on the day the check was given their intestate owed him anything, and obtaining an answer in the negative, thereby gave proof as to the transaction between the parties at the time of giving the check, and opened the way to the defendant to testify thereto. . . . The cause of action, if any, arose out of the giving of the check, and whether it created a cause of action depended upon the real nature of that transaction, whether the check represented a loan, gift or something else. The check, on its face, imported a personal transaction between the parties to the instrument. . . . The material issue was, What was the real character of that transaction? The plaintiffs, by calling the defendant and proving by him that the intestate owed him nothing when the check was given, showed that the transaction was not a payment, and, by eliminating this element, characterized the transaction as a loan. If the question put to the defendant by the plaintiffs had been in a direct form—as, for in-

stance, 'Was the check given for a debt?'—no doubt
could be entertained that the question would have been
concerning the transaction between the parties when
the check was given, and, if answered in the negative,
the door would have been opened to the defendant to
show what the transaction was, and that it was not a
loan, which would be the presumption in the absence
of further explanation.   The mere form of the ques-
tion can make no difference, if the question put, in
substance, called for an affirmation or negation as to
the character of the transaction in question.  .  .  .
They could not call the defendant and show by him
that there was no debt and, consequently, that the
transaction was not the payment of a debt, and pre-
clude him from testifying as to what the transaction
was, or that it was not that which the evidence given
by him on their examination presumptively estab-
lished it to have been.  .  .  .  The examination of the
defendant by the plaintiffs as to the existence of a debt
between the witness and the intestate when the check
was given directly bore upon the nature and character
of the transaction, and was an indirect method of prov-
ing the transaction itself.   They thereby made the de-
fendant a competent witness to testify in his own be-
half as to the same transaction."   (Pages 579-582.)

It is not necessary to consider the competency of all
the evidence that tended to show a purpose to discrimi-
nate against the children to whom no property was
conveyed, since we decide that a part of it was prop-
erly admitted.

Two of the parties by a cross-petition in error ask a
reversal of another feature of the judgment, based on
a finding that a conveyance to them was made in trust.
To preserve for review the question involved it was
necessary that they should have presented it to the
district court by a motion for a new trial.   Only one
motion of that character was filed, and it was made
only by the appellants already named.   Under these
circumstances we can not examine the ruling com-
plained of by the cross-petitioners.

The judgment is affirmed.

Plowman v. Nicholson.

## OPINION ON REHEARING.

### SYLLABUS BY THE COURT.

1. PARENT AND CHILD—*Voluntary Conveyance to Child—Advancement—Gift—Evidence.* The presumption that a voluntary conveyance of property from a father to a child is intended as an advancement is based upon the supposition that he intends to treat his children with equal favor in the distribution of his property, and whatever shows a purpose to discriminate against one of them in that regard tends to overthrow the presumption that he intends a deed to another as an advancement.

2. —— *Declarations of Parent Evidence that a Preferential Gift was Intended.* Where a parent executes a series of deeds to several of his children, seemingly in pursuance of a general plan, evidence of what he said at the time of the delivery of one of them, tending to show a purpose to discriminate against a part of his children in the distribution of his property, is competent evidence that all the deeds of the series (including even those of an earlier date) were intended as preferential gifts.

The opinion of the court was delivered by

MASON, J.: In the original opinion in this case practically the only question discussed was the admissibility of certain testimony which was treated as tending to show that the lands conveyed by the parents to their several children were intended as outright gifts and not as advancements. A rehearing was granted to give counsel an opportunity to be heard further upon the question whether any of the evidence introduced really had that tendency. After a reëxamination of the entire record the court is still of the opinion that the case was rightly decided.

There is no doubt and no disagreement among the authorities as to the general rule which is thus stated:

"Substantial gifts of money or property by a parent to a child are ordinarily presumed to be advancements chargeable to the child in the distribution of the donor's estate, and the burden of showing the contrary rests accordingly on the party denying the advancement.

This presumption, however, is a presumption of fact which may be rebutted." (14 Cyc. 167.)

The foundation of this presumption, however, is the supposition that a parent intends to treat his children with equal favor.

"It is equality in the division of the parent's property, which the parent is supposed to desire, that raises the presumption that the transfer to the children or child is an advancement." (*Crumley v. Crumley,* 63 N. J. Eq. 568, 571.)

"As between a loan, a gift and an advancement, the presumption is in favor of an advancement, because of its tendency to equality." (*Patterson's Appeal,* 128 Pa. St. 269, 281.)

Whatever shows an intention on the part of the parent to make an unequal division of his property— to discriminate against one of his children in that regard—necessarily tends to overthrow the presumption that he intended a conveyance to another as an advancement. In the present case there was evidence that at the time of delivering a part of the deeds the father (and indeed both parents) used language fairly indicating a settled purpose that the sons George and Charles were not to be as well cared for in the distribution of the property as the other children. The appellants assert that declarations of a grantor subsequent to the delivery of a deed are incompetent to show its purpose, and that the application of this rule would, as to some of the deeds at least, leave no evidence to overcome the presumption that they were intended as gifts by way of advancement. There is a conflict of authority as to the general rule on this subject. (4 Encycl. of Ev. pp. 612, 613; 16 Cent. Dig. cc. 1774-1781; 14 Cyc. 168.) Here, however, an exceptional situation is presented. The parents executed a series of conveyances, seemingly in pursuance of a general plan. Whatever they said in delivering one deed illuminated their purpose with respect to all.

Their conduct at every stage of the proceedings tended to give character to the entire transaction. As was said in *Brook v. Latimer,* 44 Kan. 431:

"The question of advancement in all cases is entirely dependent on the intention of the donor. That intention can be best ascertained by the declarations of the parent at the time of the transaction, and by his acts done and performed in pursuance of his declarations. In many cases his declarations made prior to the advancement, or his statements made thereafter, are admissible to establish the fact. It may be established by the adoption of a particular rule or system in the treatment of his children, with respect to gifts, or loans of money, or by a general policy adopted with reference to his donations to the members of his family." (Page 433.)

The judgment is affirmed.