No. 22,516.

ARTHUR ROBERTSON and MARY ROBERTSON, *Appellees,* v. JACOB WANGLER and LENA WANGLER, *Appellants,* ROBERT ROBERTSON et al., *Appellees.*

SYLLABUS BY THE COURT.

1. ACTION—*Ejectment—Partition—Accounting.* A ruling admitting evidence is held to have been nonprejudicial.

2. EVIDENCE—*Transaction with Person Since Deceased.* The rule that the statute relating to the incompetence of a party under certain circumstances to testify concerning transactions with a person since deceased may be waived by the adverse party examining him as to a part of the transaction involved, is applied in this situation: A party testified in his own behalf that he had seen a deed (under which he claimed) delivered by the grantor (his grandmother) to the grantee (his mother). On cross-examination it was brought out that just before the delivery he had gone to the grantor's house, found the deed, and brought it to her. It is held that on cross-examination he was properly permitted to testify further that the grantor had told him where the deed was and sent him to get it.

3. SAME. In the circumstances above stated it is held that the witness' getting the deed for his grandmother and her delivering it to his mother are not so connected as to cause the delivery to be regarded as a transaction to which he was a party, and therefore to render him incompetent to testify concerning it; nor is his testimony to be rejected on the theory that its admission would be a violation of the spirit of the statute.

4. SAME—*Unsworn Declaration of Party in Possession of Land.* Testimony of unsworn declarations is held not to have been of such a

nature as to be rendered admissible because of the speaker being in
the possession of the land in controversy.

5. PRACTICE—*Instructions.* Rulings in the giving and refusing of in-
structions are held not to warrant a reversal.

6. SAME—*Omission to File Pleadings—Jury Trial.* The fact that some
of the defendants whose interests were identical with the plaintiffs
omitted to file pleadings, is held not to have resulted in a denial to the
appellants of their right to a trial by jury with respect to their con-
troversy with them.

7. NEW TRIAL—*Newly Discovered Evidence.* The newly discovered evi-
dence offered is held not to have required the granting of a new trial.

8. TRIAL—*Finding of Facts.* Findings of fact are held not to have been
demonstrably wrong.

9. SAME—*Mistake in Computation—Unimportant.* A mistake in compu-
tation in the general verdict is held not to have been important.

10. SAME—*No Error in Accounting.* The result of an accounting is held
not to show error.

Appeal from Harper district court; GEORGE L. HAY, judge.
Opinion filed June 5, 1920. Affirmed.

*E. C. Wilcox, Donald Muir,* and *Myrtle Youngberg,* all of
Anthony, for the appellants.

*A. L. Noble,* of Wichita, *J. N. Tincher,* of Medicine Lodge,
and *J. G. Washbon,* of Harper, for the appellees.

The opinion of the court was delivered by

MASON, J.: By the death of her husband intestate about
1897 Sarah Wangler inherited a half interest in a quarter sec-
tion of land, the other half interest descending to their chil-
dren, Jacob Wangler and Clara Robertson. Clara Robertson
died in February, 1908, and Sarah Wangler in March, 1916,
neither leaving a will. Jacob Wangler continued in the oc-
cupancy of the land. In February, 1917, this action for eject-
ment, partition and accounting was brought against him by
two of the five children of Clara Robertson. The other three
children and their father, Robert Robertson, the husband of
Clara Robertson, although their interest was the same as that
of the plaintiffs, did not join them in bringing the action, but
were made defendants. Jacob Wangler's wife was made a
defendant in virtue of that relationship. Each of the children
was found to have a one-sixteenth interest in the land, their

father, Robert Robertson, a one-fourth interest, and Jacob Wangler a seven-sixteenths interest, and judgment was rendered accordingly, from which Jacob Wangler (his wife joining) appeals.

Each of the children derives a claim to $\frac{1}{80}$ of the land (this and all other fractions referring to undivided interests) through the following chain of title: Clara Robertson in 1899, while owning $\frac{1}{4}$, made a deed therefor to her mother, Sarah Wangler, and her brother Jacob Wangler, each thereby receiving $\frac{1}{8}$. At the death of Sarah Wangler her $\frac{1}{8}$ descended $\frac{1}{16}$ to her son Jacob Wangler, and the remaining $\frac{1}{16}$ in equal shares to the five children of her then deceased daughter, Clara Robertson, each receiving $\frac{1}{80}$. Jacob Wangler (his wife joining) pleaded that the deed of Clara Robertson for her one-fourth interest, instead of being made in part to his mother, Sarah Wangler, was made solely to himself. This question of fact was determined against him, the deed itself being produced and apparently agreed to as that in question. The claim of the adverse parties as thus far stated may therefore be considered as admitted or proved.

The plaintiffs' account of the devolution of the rest of the title is as follows: Sarah Wangler conveyed (subject to a life interest reserved to herself) the $\frac{1}{2}$ which she acquired when her husband died, to her daughter, Clara Robertson, upon whose death a few weeks later it descended $\frac{1}{4}$ to Robert Robertson, her husband, and $\frac{1}{20}$ to each of their five children. The principal dispute of fact involved in the case was whether or not Sarah Wangler executed a deed for the half interest to Clara Robertson—particularly whether such a deed was ever delivered—and the rulings assailed by the appellant for the most part related to that issue. Jacob Wangler asserts a right to the property by virtue of an agreement of Sarah Wangler to will it to him in consideration of his caring for her during her life.

1. The lawyer who drew the deed just referred to, in the course of his testimony concerning the circumstances attending its preparation, was asked what the grantor, Sarah Wangler, had said as to how it happened that the grantee, her daughter, Clara Robertson, had at the time no interest in the land. An objection to the competency of the question was

overruled, and he replied in substance that Mrs. Wangler had said that her daughter had deeded to herself and her brother Jacob the one-fourth she (the daughter) had acquired by inheritance, and she (the mother) "thought it would be fair and right for Clara to have her interest in her father's estate and she wanted to make it so she would." No motion appears to have been made to strike out any of the answer. Whether competent or not, the portion of the answer which was responsive to the question could not have been prejudicial except as bearing on the issue as to whether the deed made by Clara Robertson ran to Jacob alone or to Jacob and Sarah together, and as the deed itself was introduced, as already stated, this part of the answer could not have been important. Nor does any of it appear very vital. It is suggested that prejudice resulted because in his opening statement the plaintiffs' attorney had said that Clara Robertson had made the deed so that money could be borrowed to get Jacob out of some trouble he had gotten into. We think the connection too remote to give force to the suggestion.

2. The evidence of the delivery of the deed from Sarah Wangler to her daughter, Clara Robertson, was given by one of the plaintiffs, Arthur Robertson, who was 24 years old when he testified and 14 at the time of the occurrences he related. The substance of his testimony in chief may be thus stated, a part of it being given over objections as to his competency.

Sarah Wangler, his grandmother, was sick at the home of his mother, Clara Robertson, about three or four weeks before the death of the latter. He saw Mrs. Wangler with the deed in her possession—a deed conveying a half interest in the quarter section—and he saw her give it to Mrs. Robertson, who put it in a cupboard in the kitchen, where it remained until she died, after an illness of about two weeks. Later he saw it in his father's pocket.

On cross-examination these questions were asked and answers given:

"Q. Do you remember going over to Jake Wangler's house after your grandmother died? A. No, sir. I went over there after she died, yes.

"Q. Well, after your mother died, you went over to Jake Wangler's after your mother died to sign (get) a paper over there? A. No, sir.

"Q. Do you remember you went into the room where the old lady had lived or was living and took some papers out from under the carpet? A. Not after my mother died.

Robertson v. Wangler.

"Q. Did you take one before your mother died? A. Yes.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. That was when, with reference to the time that your mother died? A. That was about three or four weeks before my mother died.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. That was the same instrument you saw up in the cupboard? A. Yes, sir.

"Q. Afterwards? A. Yes, sir.

"Q. Well, what did you do with it after you took it out from the carpet? A. Took it home and gave it to my grandmother.

"Q. Don't you know, as a matter of fact, that your grandmother took it away from you? A. No, I guess not.

"Q. After you got it out from under the carpet? A. I gave it to her. She was sick in bed."

During the redirect examination proceedings were had indicated by this extract from the abstract:

"Q. You say that it was the same day that you saw your grandmother hand this deed to your mother that you got it from under the carpet? A. Yes, sir.

"Q. Where was it at—at whose house? A. In my grandmother's house where Jake lived.

"Q. How far was that from your house? A. Just a mile south.

"Q. And was your grandmother sick at your house? A. She was.

"Q. How did you come to go and get that deed? A. My grandmother told me to go down to Jake's—

"Defendants object and ask to have it stricken out.

"Objection overruled.

"Defendants move to strike that out because it was a conversation had with Mrs. Wangler, who is now deceased.

"Objection overruled.

"A. She told me to go down to Jake's and get the deed and told me where it was at.

"Defendants object to that and ask that it be stricken out—conversation and statement claimed to be made by her.

"Objection overruled.

"Q. Did you know where the deed was before that? Before she told you? A. No.

"Q. You went down there, did you? A. Yes.

"Q. And who was there at the house? A. There was not anyone there.

"Q. And where did you find the deed? A. Under the carpet exactly where she told me to get it.

"Defendants move to strike out that part of it because it is a statement of fact or a statement made by the deceased Mrs. Wangler under which all the parties to this suit claim.

"Objection overruled.

Robertson v. Wangler.

"Q. What did you do when you found the deed there? What did you do with it? A. I took the deed out and looked at it and read it over and looked it over and took it home and gave it to grandmother.

"Q. And was it after that that you say that your grandmother handed it to your mother? A. Right in my presence. I gave it to my grandmother and she gave it to my mother."

The appellants urge that the objections shown should have been sustained under the rule forbidding a witness to testify in his own behalf in respect to any transaction or communication had personally by him with a person since deceased, where either party claims through such person. (Gen. Stat. 1915, § 7222.) It will be noted that in the direct examination no testimony was given concerning anything that took place between the witness and his grandmother. He merely narrated what he had seen take place between her and his mother— nothing being said as to how the deed which he saw delivered had come into the hands of his grandmother at that time. In the cross-examination it was developed without objection, by answers that were responsive to the questions, that he went from his mother's home to that of his grandmother and found the deed under the carpet, and that he brought it back and gave it to his grandmother. The appellants having voluntarily brought out this much of the witness' relation to the matter, we think it was competent for the adverse parties to elicit the further facts that his trip to his grandmother's home was made at her request to procure the deed and that he found it in the place she had described to him. The matters inquired about on behalf of the plaintiffs were pertinent by way of explaining those elicited by the appellants. The witness said nothing about his having had the deed in his control until the cross-examination required him to tell of his getting it and handing it to the grantor. Being now a beneficiary under it and a plaintiff in the case, an explanation of how he came by it and why he made such disposition of it was proper if not necessary to repel the adverse inferences that might otherwise have been drawn. The subject had been so far opened up by the appellants as to effect a waiver of the rule. (*Bank v. Abbott,* 104 Kan. 344, 179 Pac. 326.)

3. The appellants contend, however, that the rule was violated in the direct examination, before anything had occurred on which to base a claim of waiver, by permitting the witness

to testify that he saw his grandmother give his mother the deed, and in support of the contention rely upon *Wills v. Wood,* 28 Kan. 400. It was there held that where a conversation had taken place between a person since deceased and two others, neither of whom was competent to testify as to what was said to himself personally, the effect of the rule could not be evaded and the whole conversation put in evidence by each narrating what the person since deceased had said to the other, because this would at least be against the spirit of the statute. We do not regard the present as a parallel case. The transaction which the witness had with his grandmother was the getting of the deed at her request and the handing of it to her. There his connection with the matter ceased. He was a mere messenger. The transaction between his grandmother and his mother was the handing of the deed by the former to the latter. With this he had nothing to do. The one transaction had ended before the other began, and while there was a relation between them, the situation was quite different with respect to the application of the rule from that presented by a running conversation between several people. In view of the policy of the court to resolve doubts in favor of the admission of evidence, the theory of the Wills-Wood case is to be pressed no further than the line there drawn. A witness may testify to transactions had by others with persons since deceased, although the circumstances were such as to have disqualified him if he had taken part in them. (Notes, 29 L. R. A., n. s., 1179; 42 L. R. A., n. s., 320; *Gaston v. Clabaugh,* 106 Kan. 160, 186 Pac. 1023.)

4. The wife of Jacob Wangler testified that she knew of the circumstances of Arthur Robertson taking a paper from under the carpet, and that the paper he took was a proposed will of Sarah Wangler devising her property to Clara Robertson; that when he took it out from under the carpet his grandmother went over and got it and destroyed it. On cross-examination she said she did not see him take the paper—that all she knew about it was what she had learned from Mrs. Wangler. She also testified that Mrs. Wangler had told her she had taken this document out of Robert Robertson's pocket after his wife's death. All the testimony she had given about Arthur taking the paper out from under the carpet, and about Mrs.

Wangler taking it from Robert's pocket, was stricken out. The appellants contend that the declarations of Mrs. Wangler on these matters were admissible within the rule applied in *Kitchell v. Hodgen,* 78 Kan. 551, 97 Pac. 369, and cases there cited, because they were spoken while she was in possession of the land in controversy, in explanation of her rights therein and in connection with her disposing of it to Jacob Wangler. If the contention is sound, it must be on the theory that the evidence tended to show that, although Mrs. Wangler was in possession of the land and had the legal title to five-eighths of it, she had assumed an obligation to devise her interest to Jacob Wangler. It does not appear to us to be open to that interpretation, but to consist of a narration of past events intended to contradict the story of Arthur Robertson.

5. In instructing the jury the court undertook to enumerate the things necessary to be found in order to require a verdict in favor of the appellants, and included among them the payment of taxes and the making of valuable improvements by Jacob Wangler. No prejudice can have resulted from the inclusion of these items, for the jury found specifically that Jacob Wangler had paid the taxes and made the improvements. The verdict therefore could not have been based upon a failure of the appellants to prove their contentions in this regard.

The appellants complain of the refusal of their request for an instruction reading as follows:

"You are further instructed that if Sarah Wangler made a will or any written agreement by which she agreed to transfer to Clara Robertson her interest in said real estate providing she would build her a house and maintain her there and the said Sarah [Clara] Robertson did not perform the terms of said agreement, then she would not be entitled to any portion of the real estate so agreed to be conveyed to her."

This requested instruction was so worded as naturally to lead the jury to suppose that the plaintiffs were relying upon such a writing as that described. Evidence was given in behalf of the appellants of the execution of an instrument of that character, but the plaintiffs relied upon an outright deed which they contended, and the jury specifically found, had been made by Sarah Wangler to Clara Robertson. We think there was no occasion for the instruction, that it would have been misleading, and that the specific finding referred to shows

that the verdict was not based on any theory to which it could rightfully apply.

6. Robert Robertson, the father of the plaintiffs, filed no pleading until after the verdict had been returned, when (leave of court therefor having been given) he filed an answer admitting the allegations of the petition and asking partition as therein prayed. The three Robertson children who were made defendants were minors and filed no pleading other than a general denial of the petition. After the return of the verdict the court decided the partition and accounting branch of the case upon the evidence already introduced, adopting most of the findings made by the jury and making some additional ones, and rendered judgment in favor of Robertson and his five children. The appellants contend that the granting of permission for Robert Robertson to file his answer was an abuse of discretion, and that they were denied the right to a trial by jury of the issue between themselves on the one hand and Robert Robertson and his three minor children on the other. We regard it as impossible for the appellants to have been prejudiced by the fact that the case was submitted to the jury without formal issues having been made up between themselves on the one hand and the three minor children and their father on the other. The plaintiffs set out in their petition the condition of the title as claimed by them, expressly stating the interests in the land held by their father and their three minor brothers. If the facts were such as to entitle the plaintiffs to recover, it necessarily followed that their father and their brothers owned the portion of the land assigned to them in the final judgment. The jury specifically found that Sarah Wangler had not agreed to give the land to Jacob Wangler, and that she had deeded an undivided one-half interest in it to the plaintiffs' mother. These findings were determinative of the real questions of fact that were in controversy. They were made in an action in which Robert Robertson and his three minor sons were parties, and they necessarily entered into the judgment rendered as between the plaintiffs and the appellants. If the parties whose interests were identical with those of the plaintiffs had formally signified their adoption of the allegations of the petition, it could have given the appellants no means of supporting their

claims that they did not already possess; the absence of that condition did not in any way hinder them in making their showing. We think there is nothing substantial in the objections based on the want of more complete pleadings, or in the contention that by reason thereof they were denied a jury trial as to a part of their opponents.

7. A new trial was asked on the ground of newly discovered evidence. Two additional witnesses offered to testify that Sarah Wangler was not sick and in bed at the time of Clara Robertson's last illness. This evidence does not appear to contradict that of the plaintiffs, and in any event is not of sufficient importance to require the granting of a new trial. A third witness who had already testified offered to give additional testimony concerning statements made by Clara Robertson and Sarah Wangler. The fact that she had already been on the stand is a sufficient reason, in the absence of exceptional circumstances, for upholding the decision of the trial court so far as it turns upon her offer. (*Dunham v. Bokel,* 105 Kan. 369, 184 Pac. 636.)

8. The appellants complain of an affirmative answer given by the jury to the following question submitted at their request:

"If a deed was made by Sarah Wangler to Clara Robertson, state whether or not the grantor in said deed, intended, when it came into the hands of Arthur Robertson, that the title should pass to the heirs of Clara Robertson."

This is capable of being interpreted as meaning that the jury believed that at the time the deed made by Sarah Wangler came into the hands of Arthur Robertson, her grandson, she intended that the title should at some time pass to the heirs of Clara Robertson, the grantee. As so construed, it is at least unobjectional, and the construction seems as plausible as any other that would make the question pertinent to the issues.

The jury also returned a negative answer to the question whether Sarah Wangler mortgaged the real estate with the knowledge of the children and husband of Clara Robertson. The appellants complain also of this, but point out no evidence showing such knowledge on the part of the children.

Complaint is also made of the finding against the truth of

Jacob Wangler's story of his agreement with Sarah Wangler regarding her support. It cannot be said that the circumstances were such as to compel its acceptance.

9. In the general verdict the jury found that the plaintiffs were entitled to recover possession of an undivided 9/10 interest in the land. The fraction should have been $^{10}\!\%_{8}$, the mistake being obviously one of computation, and of no importance, especially in view of the special findings.

10. A final complaint is of the result of the accounting, especially in respect to the refusal of allowances for expenditures. The matter is one in which the decision of the trial court carries great weight, and we find no sufficient reason for overruling the result reached.

The judgment is affirmed.