No. 23,289.

H. E. NEWLIN and A. V. ROBERTS, *Appellees,* v. GEORGE E. LE KRON, *Appellant,* et al.

### SYLLABUS BY THE COURT.

1. CANCELLATION OF LEASE—*Written Permission to Sublet Not Delivered to Lessee.* Certain rulings on evidence examined, and held to be free from error.

2. SAME. The 12th finding that the typewritten permission to sublet, attached to the lease in controversy, was never delivered, held to have been fairly supported by competent evidence.

3. SAME. It was not error to deny a new trial.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed July 9, 1921. Affirmed.

A. L. Noble, Hal M. Black, and C. A. McCorkle, all of Wichita, for the appellant.

Kos Harris, V. Harris, J. N. Haymaker, and R. E. Angle, all of Wichita, for the appellees.

The opinion of the court was delivered by

WEST, J.: This was an action to cancel a lease on various grounds, including one that its terms had been violated by a subletting on the part of the tenant, which turned out to be the pivotal point in the case. The original lessee was to pay rent of $175 a month for a certain time and then $200 a month. He afterwards sublet the entire term for $300 a month. The defendant claims that the lease had attached thereto a written consent to sublet, and such consent, duly signed by the lessors, attached to the original instrument has been submitted for our examination. Following this is another typewritten agreement to advance the dates named in the lease to conform to the completion of the building, which agreement is not signed. The plaintiffs claim that this permission to sublet was never delivered.

The court made findings of fact. The 12th was to the effect that "some short time after the execution of the lease" the lessors signed the permission to sublet on condition that the lessee sign the typewritten slip following such permission to advance the dates to conform to the completion of the building—

"Which he did not do, and the writing signed by Roberts and Maple to sublet the building on the premises in question was to be delivered only on condition that Le Kron was to sign the foregoing writing, which was never done, and the written provision for subletting the building on the leased premises was never delivered and never became a part of the lease from Roberts . . . to Le Kron."

The court's second conclusion of law was:

"The lease should be cancelled because it contained a covenant against subletting, or assigning the lease and George E. Le Kron sublet or assigned the leased premises in contravention of the covenant."

The original lessee, George E. Le Kron, appeals and assigns as the principal errors: refusal to permit certain cross-examination of plaintiff, Roberts; excluding a certain lease; making the 12th finding of fact; and the denial of a new trial.

Mr. Roberts testified touching the addition to the lease of the written consent to sublet and stated that it was to be on condition that the lessee should sign the written consent for an extension of time to complete the building. On cross-examination, exhibit F, a former lease of the same property, was shown the witness and he was asked if that instrument was ever delivered to Mr. Le Kron, and if after that he did not decide to construct the building a little differently, to which objections were made and sustained. We are unable to see how this ruling was material error. The theory seems to be that because the former lease, drawn but not used, for this property contained a certain provision, it was therefore competent and material evidence to show when the subletting addendum to the other lease was delivered. Certainly, this former lease had not been delivered at all, and we do not see how its mere form and contents could indicate when the latter was delivered. Counsel say that its introduction would have indicated that "permission to sublease had always been a part of any and all agreements for the lease of the premises." But we are not troubled with any question or doubt as to the permission being attached to the lease now in controversy—only with the time of its delivery, and we repeat that on this point the excluded paper could have shed no light. The document was in evidence on the hearing of the motion for a new trial and duly considered by the court, but counsel say in their brief that "the trial court persisted in his original view that the September lease was entirely immaterial as evidence" in the case. So the defendant did finally get this lease before the court and procure its opinion thereon before the motion for a new trial was denied.

It seems to be contended that finding No. 12 was not supported by the evidence, or as said in the brief, was contrary to the weight of the evidence. But the trial court had the testimony of Mr. Roberts squarely contradicted by that of Mr. Le Kron, both of whom were deemed credible. Then there was the added evidence of Mr. Maple on the motion for new trial, to the effect that his affidavit was not correct, but that the subletting clause was signed by him "a few weeks . . . after the building had been started" and that some three or four weeks elapsed after the lease was signed before the order was signed. This conflict and this corroboration of oral testi-

mony make it impossible under the rule for us to follow counsel's exhortation to "take the documentary evidence and admitted facts, and determine the issue of fact," for that is precisely what the trial court had to do, and is not an appellate duty.

As to the motion for a new trial, the testimony of Mr. Maple has already been shown to have furnished no ground. It is urged that Mr. Lyon's affidavit was not given proper weight. This was to the effect that before Christmas, 1919, he had a conversation with Mr. Roberts in which the latter told him he had heard that Mr. Le Kron had sold the garage and had subleased the building; that Mr. Lyon then told Mr. Roberts that Le Kron had sold out, and to whom, and the amount of subrental he was to get a month. He then detailed an extended conversation in which he stated what Roberts said touching the lease and the sublease, and in which the matter of buying off Mr. Le Kron was discussed. This is urged as specially significant in view of Mr. Roberts' testimony that he knew of no violation of the terms of the lease by Le Kron until about January 20, 1920. But even if diligence had been shown in an attempt to procure this evidence, and none was shown, it was all covered by Mr. Roberts in his testimony on the motion, so that the trial court had the full benefit of the version put upon the matter by Mr. Lyon and Mr. Roberts also, and the Lyon affidavit was in fact mainly cumulative at most, and for all these reasons it was not sufficient to warrant or require the granting of a new trial. (*Sheahan v. Kansas City,* 102 Kan. 252, 169 Pac. 957; *Dunham v. Bokel,* 105 Kan. 369, 184 Pac. 636; *Robertson v. Wangler,* 107 Kan. 45, 54, 190 Pac. 788.)

The trial was by the court, and while the presumption is that no improper evidence was considered, it appears that all that which was excluded was, before the end of the matter, fully considered. Notice was given of tentative findings, counsel were heard and numerous findings finally made, and the motion for a new trial was supported by affidavit and oral testimony, all of which was patiently considered, and at the end of it all, the trial court was still of the opinion that the plaintiffs had shown a right to recover. We have examined all the complaints, and find no showing of any material error.

The judgment is, therefore, affirmed.