## PEOPLES TRUST & SAVINGS BANK v. HUBBELL.

### No. 1799.

Circuit Court of Appeals, Tenth Circuit.
March 17, 1939.

Floyd A. Sloan, of Topeka, Kan. (E. R. Sloan, of Topeka, Kan., Everson, Ryan & Hanaway, of Green Bay, Wis., and Sloan, Hamilton & Sloan, of Topeka, Kan., on the brief), for appellants.

W. S. Rice, of Smith Center, Kan., and James A. McClure, of Topeka, Kan. (Stone, McClure, Webb, Johnson & Oman, of Topeka, Kan., on the brief), for appellee.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

The Peoples Trust & Savings Bank, administrator with the will annexed of the estate of A. T. Piper, deceased, and Celia Nohr, the sole devisee under the will, brought this suit to set aside a deed dated August 25, 1931, purporting to convey 960 acres of land in Rooks and Phillips Counties, Kansas, from Piper to Eliza A. Hubbell.

The bill alleges that on or about August 25, 1931, Hubbell, "through the use of promises and threats, the full nature of which plaintiffs are unable to state," induced Piper to sign his name to an incomplete deed; that the deed was acknowledged before a notary public, and thereafter filled out so that it purported to be a conveyance of land from Piper to Hubbell; that it was never delivered by Piper to Hubbell, and that it was recorded after Piper's death. It further alleges that the deed is void and conveyed no title for the reason that the signature "was procured by fraud and undue influence, the particulars of which the plaintiffs are unable to allege."

Other than the conclusions above set out the bill contains no allegations of fraud.

The answer denied generally the allegations of the bill, challenged the sufficiency of the allegations of fraud on the ground that they are mere conclusions, and specifically alleged that the deed was duly and regularly executed, delivered, and recorded, and constituted a good conveyance. It prayed for a decree quieting the title to the land in Hubbell.

The facts as established by the evidence and found by the trial court are these:

Celia Nohr is the daughter of Piper and his former wife. She was born in 1896. Shortly after Celia's birth, Piper divorced his wife, but retained custody of Celia.

In 1892, Hubbell, then a girl 14 years of age, went to live at the Piper home. Thereafter, she went through the third and fourth grades of the public schools. While going to school she did chores, herded cattle, and did other farm work. After discontinuing her schooling, she did the housework and also assisted in the farming operations, doing a man's work such as sowing wheat, shocking wheat, hauling grain, and attending to the livestock. She cohabited with Piper and bore him three children. In 1912, Piper moved to Green Bay, Wisconsin, but continued to carry on his farm and livestock operations in Kansas. Celia accompanied her father. Hubbell remained at the ranch in Kansas and contributed her efforts to the farming and stock raising operations as she had previously done. In 1926, she moved from the ranch to Phillipsburg, Kansas. Piper spent a considerable portion of his time on the ranch in Kansas and frequently visited Hubbell at Phillipsburg. At the time Hubbell went to live at the Piper home, Piper owned 320 acres of land. By 1920, with substantial assistance from Hubbell, he had accumulated 1800 acres of land free of debt, the home in Wisconsin, and considerable intangible personalty, consisting of stocks, bonds, mortgages, and cash.

In 1926, Hubbell brought an action against Piper for a division of property. During the pendency of that action, Piper executed his will leaving all his property to Celia. A compromise was effected under which Hubbell received $1500 in cash and 160 acres of land.

In 1930, Hubbell, at Piper's request, went to live with him at Green Bay, Wisconsin. She remained there until his death, taking care of him during his last illness. During the period of her residence in Wisconsin, Hubbell made numerous trips to Kansas to look after the ranch operations.

Piper told several of his friends and neighbors in Kansas that he regarded the settlement made with Hubbell unfair in view of the services she had rendered him, and that he was going to see that she got his Kansas land.

Shortly prior to the execution of the deed, Piper told Hubbell that she had not been treated fairly in the settlement and that he wanted to transfer the 960 acres of land to her, reserving in himself a life estate. Piper requested John M. Gray of Kirwin, Kansas, to prepare a deed to certain lands reserving a life estate in Piper. Gray expressed his inability to prepare such a deed and suggested Piper have it prepared at Phillipsburg, Kansas. Shortly thereafter, Piper told two other persons he was going to have a deed prepared conveying 960 acres of land to Hubbell.

On August 25, 1931, Piper, accompanied by Hubbell, went to the office of W. A. Barron, an attorney at Phillipsburg, Kansas. At the request and direction of Piper, Barron prepared the deed in question conveying from Piper to Hubbell the 960 acres of land, but reserving in Piper a life estate. Piper executed the deed and Barron took his acknowledgment thereto, and then handed the deed to Piper. Thereupon, Piper handed the deed to Hubbell, saying, "Here's your deed." Piper requested Hubbell not to record the deed, stating that if Celia should learn of it "she would raise hell." Hubbell gave the deed to Barron and requested him to keep it for her. Barron retained custody of the deed until Piper's death and then recorded it. Barron, Hubbell, and one Welty, a client of Barron's, were present at the time the deed was prepared, executed, and delivered, and testified to the above facts with respect thereto.

After the deed was executed and delivered, Piper told many of his friends and neighbors in Kansas that he had deeded the land to Hubbell, retaining a life estate in himself.

The plaintiffs introduced depositions of a number of friends and acquaintances of Piper in Wisconsin who testified to conversations with Piper, had after the execution of the deed in question, in which Piper made statements relative to future disposition of the land which would not be possible if he had transferred it to Hubbell. These statements were to the effect that he contemplated selling the land; that he had given Hubbell 160 acres of land and some personal property; that he did not want Hubbell to have any other portion of his estate; that he planned to give his entire property to his daughter, except for a few minor bequests.

The plaintiffs also introduced in evidence a court reporter's transcript of an examination of Hubbell taken in the matter of the estate of Piper, upon a citation for the purpose of discovering assets. During such examination Hubbell was interrogated with respect to conversations between her and Piper about the execution of the deed, the trip to Phillipsburg, and the transactions that occurred in Barron's office.

The trial court found that the deed was executed and delivered to Hubbell by Piper freely and voluntarily and was not procured by promises, threats, fraud, or undue influence, and entered a decree adjudging Hubbell to be the owner of the land embraced in the deed, and quieting the title thereto in her.

The plaintiffs have appealed.

■ Plaintiffs contend that the court erred in rejecting evidence offered by them tending to establish that certain government bonds and other personal property belonging to Piper and in his possession shortly prior to his death, were found in the possession of Hubbell after Piper's death. This evidence was with respect to collateral matters occurring, if at all, more than four years after the execution and delivery of the deed in question and bore only remotely on the claim of fraud and undue influence in the execution and delivery of the deed. The plaintiffs wholly failed to establish any fraud or undue influence in connection with the execution and delivery of the deed in question. Mere possession by Hubbell of bonds and other personal property formerly belonging to and in the possession of Piper, would fall far short of establishing that she secured them through fraud or undue influence so as to make the transaction admissible as an instance of another similar fraud, and the plaintiffs made no proffer of proof of other facts tending to establish that such bonds and personal property were obtained through fraud and undue influence. See New York Life Ins. Co. v. Doerksen, 10 Cir., 75 F.2d 96, 101, 102. We conclude that the rejection of the evidence did not constitute prejudicial error.

■ In 1938, the bank, as administrator of Piper, brought an action in the District Court of the United States for the District of Kansas against Hubbell on a default judgment obtained against her in the state court in Wisconsin. The United States Marshal, acting under direction of counsel for the bank, levied a writ of attachment upon the land in question. Counsel for plaintiffs contend that the court erred in admitting evidence respecting the levy of the writ. This evidence tended to establish an admission on the part of the bank that title to the land was in Hubbell. We think it was competent.

Counsel for the plaintiffs contend that the court erred in admitting the evidence of Hubbell as to her relations with Piper, the services she rendered to him, the conversations between her and Piper respecting the settlement, and what occurred immediately prior to and at the time of the execution and delivery of the deed.

Section 60-2804, G.S.Kan.1935, reads in part as follows:

"No person shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person, where either party to the action claims to have acquired title, directly or indirectly from such deceased person, or when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner, or assignee of such deceased person, * * *."

■ The plaintiffs offered in evidence the testimony of Hubbell with respect to the execution and delivery of the deed in question taken in the proceedings in Wisconsin to discover assets. This amounted to a waiver of the statutory disqualification and gave Hubbell the right to testify fully with respect to that transaction.[1] The testimony of Hubbell respecting her relations with Piper and the services she rendered him was received without objection.

■ Where a chancellor has considered conflicting evidence and has made his findings and decree thereon, they must be regarded as presumptively correct, and unless a serious mistake has been made in the consideration of the evidence, or an obvious error has intervened in the appli-

[1] Niccolls v. Esterly, 16 Kan. 32, 34; State Bank of Downs v. Abbott, 104 Kan. 344, 179 P. 326, 327; Plowman v. Nicholson, 81 Kan. 210, 105 P. 692, 693, 106 P. 279; Robertson v. Wangler, 107 Kan. 45, 190 P. 788, 791; Poole v. Poole, 96 Kan. 84, 150 P. 592, 596, Ann.Cas.1918B, 929; Note, 64 A.L.R. p. 1148 et seq.

cation of the law, the decree should be permitted to stand.[2]

We are convinced that no serious error intervened in the admission or rejection of evidence and that the findings of the trial court are abundantly supported by the evidence adduced.

For nearly forty years Hubbell lived in the Piper home, where she toiled arduously, doing the housework, laboring in the fields, and caring for the livestock. Her efforts, no doubt, largely contributed to the amassing of a substantial fortune by Piper. In addition to this, she cohabited with Piper and bore him three children. She went to his home in Wisconsin and cared for him in his declining years and during his last illness. The compromise entered into between Hubbell and Piper prior to the execution of the deed was manifestly unfair and inadequate. We have no doubt that Piper recognized this injustice and that he gave the deed freely and voluntarily for the purpose of correcting it. It was a just reward for long years of faithful service by Hubbell as a helpmate and common-law wife.

The decree is affirmed.

[2] Oklahoma Packing Co. v. Oklahoma Gas & Electric Company, 10 Cir., 100 F. 2d 770, 776;

Whitchurch v. Crawford, 10 Cir., 92 F.2d 249, 254;

Standard Oil Co. of Colo. v. Standard Oil Co., 10 Cir., 72 F.2d 524, 527.